UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
UNITED STATES OF AMERICA,           **MEMORANDUM AND ORDER**

  - against -                            91-cr-1219-1 (DRH)
                                           16-cv-3355 (DRH)
CRAIG WILLIAMS,

                             Defendant.
----------------------------------------------------------------X

**HURLEY, Senior District Judge:**

**APPEARANCES**

**BREON PEACE**
**UNITED STATES ATTORNEY FOR THE**
**EASTERN DISTRICT OF NEW YORK**
271 Cadman Plaza East
Brooklyn, NY 11201
By:    Andrew D. Grubin, Esq. on the Motion to Vacate
        Adam R. Toporovsky, Esq. on the Motion to Reduce Sentence

**Craig Williams**, *pro se*

**FEDERAL DEFENDERS OF NEW YORK**
Attorneys for Defendant/Petitioner on the Motion to Vacate
One Pierrepont Plaza – 16th Floor
Brooklyn, NY 11201
By:    Allegra Glashausser, Esq.

**DEBEVOISE & PLIMPTON LLP**
Attorneys for Defendant/Petitioner on the Motion to Reduce Sentence
919 Third Avenue
New York, NY 10022
By:    John Gleeson, Esq.
        Marissa R. Taney, Esq.
        Lauren Dolecki Kober, Esq.
        Johanna-Sophie Dikkers, Esq.

## INTRODUCTION

Presently the before the Court are Defendant/Petitioner Craig Williams's motions (i) to vacate, set aside or correct his sentence under 28 U.S.C. § 2255(a) and *Johnson v. United States*, 135 S. Ct. 2551 (2015), and (ii) to reduce sentence under 18 U.S.C. § 3582(c)(1)(A)(i).[1]  For the reasons stated below, Williams's motion to vacate is denied, and his motion to reduce sentence is granted to the extent that his term of imprisonment is reduced to 40 years.

## BACKGROUND

Between May 1, 1991 and October 1, 1991, Craig Williams and his coconspirators committed multiple armed post office and bank robberies, often engaging in extremely threatening and brutal conduct.  By way of one example, during the robbery of the European Bank on Jamaica Avenue in Brooklyn, New York on June 27, 1991, the bank manger advised coconspirator Campbell that she was unable to immediately open the vault as instructed due to a fifteen minute timer.  In an effort to cure that perceived problem, Williams told Campbell "to 'blow [her] f****** head off.'"  (Presentence Investigation Report dated Oct. 18, 1993, ¶ 38).

Williams's disregard for human life is further evidenced by his conduct concomitant with his arrest on October 10, 1991.  When agents pulled over the vehicle he was driving, he bolted from the car and fled on foot.  "After being pursued by the

---

[1]     A motion to reduce sentence under the First Step Act of 2018 is often referred to as a motion for "compassionate release."  *United States Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) ("[C]ompassionate release is a misnomer.  18 U.S.C. § 3582(c)(1)(A) in fact speaks of sentence reductions.").

arresting agents for approximately [one] mile, . . . Williams shot a pursuing agent three times, once in the stomach and twice in the leg." (*Id.* ¶ 26). Fortunately, the agent survived.[2]  Williams himself was hit once during the exchange of gunfire and was thereupon taken into custody.

On July 29, 1993, after a three-month trial, a jury convicted Williams of nineteen counts: conspiracy to commit bank and postal robbery, 18 U.S.C. § 371 (Count 1); postal robbery, 18 U.S.C. § 2114 (Count 12); armed bank robbery, 18 U.S.C. § 2113(a) (Counts 14, 20, 22, 24, 26, 28, 30); attempted murder, 18 U.S.C. § 1111 (Count 31); assault on a United States Deputy Marshall (Count 32); and use of a firearm during a crime of violence, 18 U.S.C. § 924(c)(1) (Counts 13, 15, 21, 23, 25, 27, 29, and 33).

On May 11, 1994, this Court sentenced him to 160 years and 8 months in prison, followed by 5 years of supervised release.  The Second Circuit affirmed Williams's conviction and sentence on April 30, 1996.  *United States v. Williams*, 101 F.3d 683 (2d Cir. 1996), *cert. denied* 519 U.S. 900 (1996).

Williams moved for leave to file a successive 28 U.S.C. § 2255 petition, consisting of the instant motion to vacate, on June 21, 2016.  [DE 705].  The Second Circuit granted leave on April 9, 2021.  Motion Order at 2, *Williams v. United States*, No. 16-2067 (2d Cir. Apr. 9, 2021) [ECF 53] ("*Williams* Succ. Pet. Order").  The

---

[2]    The agent, United States Deputy Marshall Charles Jardine, (Presentence Investigation Report dated Oct. 18, 1993, ¶ 18), opposes Williams's application and has expressed "fear for his own physical safety and that of the witnesses who testified against Williams," (Def. Reduce Sent. Mem. at 21 [DE 793-1]).

Federal Defenders filed a memorandum in support of Williams's motion on May 26, 2021, [DE 780], and the Government responded on June 25, 2021, [DE 784].

Williams requested the warden of FCI Butner, North Carolina file a motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (*See* Def. Reduce Sent. Mem. at 3 [DE 793-1]). When thirty days elapsed without a motion filed, counsel for Williams brought it directly to this Court on July 13, 2021. (*Id*.). The Government responded on December 18, 2021. (Gov't Reduce Sent. Resp. [DE 798]). Williams's counsel replied on October 11, 2021. (Def. Reduce Sent. Reply [799]).

## DISCUSSION

The Court first addresses Williams's (I) motion to vacate, followed by his (II) motion to reduce sentence.

## I.    Motion to Vacate

Williams's successive § 2255 petition moves the Court to vacate seven of his eight § 924(c) convictions, for which he was sentenced to 60 months under Count 13 and a total of 1440 months under Counts 15, 21, 23, 25, 27, and 29, alleging that the cumulative consecutive sentences are unconstitutional. Specifically, he argues that the predicate offenses—one for postal robbery and six for bank robbery—are not "crimes of violence," in that they do not require physical force necessary under § 924(c)(3)(A)'s "Elements Clause" and that the Supreme Court in *United States v. Davis*, 139 S. Ct. 2319 (2019), held § 924(c)(3)(B)'s "Residual Clause" void for vagueness.

The Court begins its analysis by explaining the steps necessary to assess the constitutionality of these § 924(c) convictions.  Then, it applies those steps first to the § 924(c) conviction predicated on postal robbery and second to the six § 924(c) convictions predicated on bank robbery.

### A.    Divisibility of Section 924(c) "Crime of Violence" Enhancement

Section 924(c) of the Armed Career Criminal Act of 1984 ("ACCA") mandates an enhanced sentenced for a defendant using or carrying a firearm during, or possessing a firearm in furtherance of, a "crime of violence," defined as:

> an offense that is a felony and
>
> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).  Following *United States v. Davis*, § 924(c)'s enhancements trigger only from offenses fitting the criteria in Subsection (A), the "Elements Clause."  139 S. Ct. 2319 (2019) (holding Subsection (B), the "Residual Clause," unconstitutionally vague).  Accordingly, a felony "offense is a crime of violence, for ACCA purposes, [only] if it has as an element the use, attempted use, or threatened use of physical force against the person or property of another." *United States v. Figueroa*, 2021 WL 1191615, at *5 (S.D.N.Y. Mar. 30, 2021) (internal quotation marks omitted).  "Physical force" in this context connotes "violent force" or "force capable of causing physical pain or injury." *Johnson v. United States*, 559 U.S. 133, 140 (2010).

To assess whether the predicate offenses underlying Williams's § 924(c) convictions are "crimes of violence," the Court must identify their elements. That entails analyzing the extent to which the predicate offense statutes are divisible. An indivisible statute "creates only a single crime," even if it "spells out various factual ways of committing some component of the offense"; a divisible statute lists its elements "in the alternative and, in doing so, creates a separate crime associated with each alternative element." *Harbin v. Sessions*, 860 F.3d 58, 64 (2d Cir. 2017) (quoting *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016)).

To determine whether an indivisible statute's elements reflect a "crime of violence," courts take a "categorical approach." *Id.* Under this approach, the court "identif[ies] 'the minimum criminal conduct necessary for conviction" under the statute by analyzing "how the law defines the [predicate] offense" and not "how an individual offender might have committed it on a particular occasion." *Begay v. United States*, 553 U.S. 137, 141 (2008); *United States v. Hill*, 890 F.3d 51, 55 (2d Cir. 2018) (quoting *United States v. Acosta*, 470 F.3d 132, 135 (2d Cir. 2006) (per curiam)). If "reality, logic, and precedent" illustrate "'a realistic probability, not a theoretical possibility,' that the statute at issue could be applied to conduct that does not constitute a crime of violence," then § 924(c) does not apply. *Id.* at 56 (quoting *Gonzales v. Duenas–Alvarez*, 549 U.S. 183, 193 (2007)). Otherwise, the predicate offense reflects a crime of violence, and § 924(c) applies.

To determine whether a divisible statute's elements reflect a "crime of violence," courts take a "modified categorical approach." *Descamps v. United States*,

570 U.S. 254, 260 (2013).  Because divisible statutes create separate crimes, a court first "looks to a limited class of documents," *e.g.*, the indictment, "to determine" which of the divisible statute's "crime[s], with what elements, a defendant was convicted of." *Mathis*, 136 S. Ct. at 2249 ("the indictment, jury instructions, *or* plea agreement and colloquy" (emphasis added)); *Descamps*, 570 U.S. at 257 (same).  Once determined, a court applies the categorical approach to that crime.  *Mathis*, 136 S. Ct. at 2249.

### B.  Postal Robbery

Williams contends a 18 U.S.C. § 2114 postal robbery conviction "no longer qualifies as a 'crime of violence'" under § 924(c)(3)(A)'s Elements Clause because it does not necessarily require "either (1) the presence of violent physical force or (2) the intentional employment of such force."  Def. Vacate Mem. at 5 [DE 705].  Section 2114(a) reads:

> (a) Assault – A person who assaults any person having lawful charge, control, or custody of any mail matter or of any money or other property of the United States, with intent to rob, steal, or purloin such mail matter, money, or other property of the United States, or robs or attempts to rob any such person of mail matter, or of any money, or other property of the United States, shall, for the first offense, be imprisoned not more than ten years; and if in effecting or attempting to effect such robbery he wounds the person having custody of such mail, money, or other property of the United States, or puts his life in jeopardy by the use of a dangerous weapon, or for a subsequent offense, shall be imprisoned not more than twenty-five years.

> (b) Receipt, Possession, Concealment, or Disposal of Property – A person who receives, possesses, conceals, or disposes of any money or other property that has been obtained in violation of this section, knowing the same to have been unlawfully obtained, shall be imprisoned not more than 10 years, fined under this title, or both.

18 U.S.C. § 2114.

Section 2114 is clearly divisible between subsections (a) and (b).  Subsection (a) is further divisible because "it lists multiple elements disjunctively."  *Pannell v. United States*, 2021 WL 3782729, at \*4 (E.D.N.Y. Aug. 26, 2021); *see United States v. Enoch*, 865 F.3d 575, 580 (7th Cir. 2017).  Section 2114(a) criminalizes at least two separate offenses – (i) non-aggravated postal robbery and (ii) aggravated postal robbery.  The list of aggravated offenses is likewise divisible into: (a) wounding the mail carrier in the course of the robbery or attempted robbery; (b) using a dangerous weapon to put the mail carrier's life in jeopardy in the course of the robbery or attempted robbery; or (c) committing a subsequent offense.  *Williams v. United States*, 794 Fed. App'x 612, 614 (9th Cir. 2019).  By listing the three as alternatives, they are not "illustrative examples" of "a crime's means of commission" but rather elements of separate crimes.  18 U.S.C. § 2114(a); *Mathis*, 136 S. Ct. at 2256; *e.g.*, *Pannell*, 2021 WL 3782729, at \*4 ("Because it lists three elements in the alternative, thereby defining multiple crimes, I find that the aggravated offense is further divisible.").

The modified categorical approach is therefore necessary to determine whether the jury convicted Williams of § 2114(a) or (b) and, if the former, whether it was non-aggravated or aggravated – and, if aggravated, which type.  To that end, the Court relies on the superseding indictment. Superseding Indictment, No. 91-cr-1219-01 (E.D.N.Y. June 7, 1996) [DE 60].  The Superseding Indictment charged Williams with, *inter alia*, "knowingly and willfully rob[bing]" postal workers and, in doing so, "put[ting] in jeopardy the lives of" said workers "by use of a dangerous weapon."

Superseding Indictment at 12–13 (Count 12).  Accordingly, the jury convicted Board of "life in jeopardy" aggravated postal robbery.

The next step is to analyze whether the minimum conduct satisfying "life in jeopardy" aggravated postal robbery is a "crime of violence" under the § 924(c) Elements Clause.  Specifically, whether there is a realistic probability that a robbery putting a life in jeopardy by the use of a weapon capable of inflicting serious bodily harm can be accomplished without "'the use, attempted use, or threatened use of physical force.'"  18 U.S.C. § 924(c)(3)(A).  It cannot.  Better stated: to commit a robbery that puts a life in jeopardy by using a weapon capable of inflicting serious bodily harm requires, at a minimum, the use, attempted use, or threatened use of physical force.

The Court takes each relevant element in turn: (1) robbery; (2) putting a life in jeopardy; (3) using a dangerous weapon.  The first, robbery, "has always been within the 'category of violent, active crimes' that Congress included in ACCA."  *Stokeling v. United States*, 139 S. Ct. 544 (2019) (quoting *Johnson*, 559 U.S. at 140); *Pannell*, 2021 WL 3782729, at *4 ("After *Stokeling* . . . there can be no doubt that armed postal robbery under § 2114(a) qualifies as a predicate crime of violence under § 924(c).").  The second, life in jeopardy, "refers to 'an objective state of danger, not to a subjective feeling of fear,'" which calls for the presence of force "capable of causing injury to another person."  *Pannell*, 2021 WL 3782729, at *4 (quoting *United States v. Donovan*, 242 F.2d 61, 63 (2d Cir. 1957)); *Enoch*, 865 F.3d at 581 ("There can be no doubt that . . . putting the life of a victim in jeopardy is a violent crime.").  The third, use of

dangerous weapon, viz. use of a weapon capable of inflicting serious bodily harm, likewise involves the use, attempted use, or threatened use of "force capable of causing physical pain or injury." *See Johnson*, 559 U.S. at 140. In conclusion, then, the minimum conduct sufficient to satisfy § 2114(a)'s "life in jeopardy" aggravated postal robbery is a crime of violence.

This holding aligns with those of the three Circuit courts already confronted with the issue. *Knight v. United States*, 936 F.3d 495, 500–01 (6th Cir. 2019) (holding the "use of a dangerous weapon to put the victim's life in jeopardy transforms" the minimum force required "into violent physical force"); *United States v. Enoch*, 865 F.3d 575, 582 (7th Cir. 2017); *In re Watt*, 829 F.3d 1287, 1290 (11th Cir. 2016). It further aligns with that of many district courts in this Circuit. *E.g.*, *Pannell*, 2021 WL 3782729, at *4–6; *United States v. Lloyd*, 2020 WL 4750241, at *8–9 (E.D.N.Y. Aug. 17, 2020); *McCullough v. United States*, 2020 WL 869118, at *4 (E.D.N.Y. Feb. 21, 2020).

The Seventh Circuit's decision in *United States v. Rodriguez* does not command a different holding. 925 F.2d 1049, 1052–53 (7th Cir. 1991). The *Rodriguez* Court held that "a person's life may be put in jeopardy for purposes of § 2114 by the carrying of a gun that remains concealed in a pocket." *Id.* The Seventh Circuit in *Enoch* later narrowed *Rodriguez*'s holding: "[I]t is beyond question that a robbery that puts a person's life in jeopardy by the use of a dangerous weapon is a violent crime under the [*Johnson*] definition and section 924(a)." 865 F.3d at 582 (internal quotation marks omitted). To the extent Seventh Circuit decisions are persuasive to district

courts in the Second Circuit, *Enoch* better fits the instant question before the Court and *Rodriguez* is not inconsistent with this Court's holding.

As a result of the foregoing analysis, Williams's § 924(c)(3)(A) conviction under Count 13, predicated on his § 2114(a)'s "life in jeopardy" aggravated postal robbery conviction, is not subject to vacatur under the holding in in *United States v. Davis*. Williams's motion to vacate is denied with respect to the § 924(c) conviction predicated on post office robbery.

### C.    Bank Robbery

According to the Williams, a 18 U.S.C. §§ 2113(a), (d) bank robbery conviction too does not "qualify as a crime of violence under" the § 924(c)'s Elements Clause. Def. Vacate Mem. at 6.  The Second Circuit, however, has held otherwise.  "Among the crimes of violence that may serve as a predicate for a § 924(c) conviction are the bank robbery and armed bank robbery offenses charged against [the defendant] in Counts One [18 U.S.C. § 2113(a)] and Two [18 U.S.C. § 2113(d)]."  *Johnson v. United States*, 779 F.3d 125, 128 (2d Cir. 2015); *see also Thomas v. United States*, 2018 WL 3094936, at *3–6 (E.D.N.Y. June 22, 2018); *Otero v. United States*, 2018 WL 2224990, at *3 (E.D.N.Y. May 15, 2018) ("[E]very federal court of appeals to consider the issue since *Johnson* has similarly held that bank robbery under 18 U.S.C. § 2113(a) and (d) is a crime of violence under 924(c)'s [Elements Clause]." (citing cases)).

Therefore, the sentence imposed pursuant to Williams's § 924(c) convictions predicated upon six § 2113(a), (d) bank robbery offenses is not subject to vacatur

under the holding in in *United States v. Davis*.  Accordingly, Williams's motion to vacate is denied with respect to the § 924(c) convictions predicated on bank robbery.

Williams's motion to vacate is therefore denied in its entirety.

## II.    Motion to Reduce Sentence

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute."  *United States v. Rabuffo*, 2020 WL 2523053, at *1 (E.D.N.Y. May 14, 2020) (quoting *United States v. Gotti*, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020)).  Under 18 U.S.C. § 3582(c), as amended by the First Step Act, a criminal defendant may move a federal sentencing court to modify an imposed term of imprisonment.  To qualify, the defendant must show that:

(1)    he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf," or that thirty days have lapsed "from the receipt of such a request by the warden of [his] facility, whichever is earlier";

(2)    "extraordinary and compelling reasons warrant" a reduction in the term of imprisonment;

(3)    these reasons outweigh "the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable"; and

(4)    that a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission."[3]

---

[3]     "A sentence reduction is consistent with the Sentencing Commission's policy statements if '[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g).  The § 3142(g) factors are largely duplicative of those in § 3553(a), but they also include 'whether the offense is a crime of violence" and "the weight of the evidence against the [defendant].'"  *Reid*, 2021 WL 837321, at *3 (internal citations omitted) (quoting 18 U.S.C. §§ 3142(g), 3582(c)(1)(A)(ii)).

*See United States v. Reid*, 2021 WL 837321, at *3 (E.D.N.Y. Mar. 5, 2021) (internal quotation marks omitted) (quoting 18 U.S.C. § 3582(c)(1)(A)).

The defendant bears the burden of showing that the circumstances justify a sentence reduction.  *United States v. Patterson*, 2020 WL 3451542, at *1 (S.D.N.Y. June 23, 2020).  Even if, however, "a defendant carries this burden, district courts have broad discretion in deciding whether to grant or deny a motion for a sentence reduction."  *United States v. Qadar*, 2021 WL 3087956, at *6 (E.D.N.Y. July 22, 2021) (quoting *United States v. Cato*, 2020 WL 5709177, at *3 (E.D.N.Y. Sept. 24, 2020)).

Because the Government does not contend Williams failed to exhaust administrative remedies, the Court's analysis first determines whether extraordinary and compelling reasons for a sentence reduction exist and then weighs the 18 U.S.C. § 3553(a) factors against those reasons.

## A.    Extraordinary and Compelling Reasons

A district court may consider "the full slate of extraordinary and compelling reasons" in assessing a motion to reduce sentence under the First Step Act brought directly by a criminal defendant.  *United States v. Brooker*, 976 F.3d 228, 230, 236–37 (2d Cir. 2020).  The court's discretion is not constrained by the reasons listed in United States Sentencing Guidelines § 1B1.13 Application Note 1(D), which apply only where the Bureau of Prisons brings the motion on the criminal defendant's behalf.  *Id.*  A court remains constrained, however, by the statutory caveat that "[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason."  *Id.* (ellipses and emphasis in original) (quoting 28 U.S.C. § 994(t)).  Williams

contends an extraordinary and compelling reason exists due to (1) the now-impermissible mandatory stacking of his § 924(c) sentences, responsible for 145 years of Williams's 160-year sentence, (2) the COVID-19 pandemic, and (3) his significant rehabilitative efforts while imprisoned.  This Court agrees, but only as to the first and the third.

### 1.  § 924(c) Stacking

At the time Williams was sentenced, § 924(c) "mandated that a defendant convicted of multiple counts of § 924(c) charges was subject to mandatory consecutive" twenty-year sentences "for each subsequent § 924(c) charge." *Reid*, 2021 WL 837321, at *4 (citation omitted).  Following the First Step Act's elimination of § 924(c)(1)(C)'s stacking provision, that is no longer true.  *Id.*  Williams contends this outdated "unforgivably harsh" practice justifies a reduced sentence.  *E.g.*, Def. Reduce Sent. Mem. at 6.

The Government contends that Williams reads *Brooker* incorrectly and that the change to § 924 does not give rise to an extraordinary and compelling reason to reduce a sentence.  Gov't Reduce Sent. Resp. at 5–11.

In the absence of binding Second Circuit precedent, this Court agrees with the reasoning of its sister district courts in rejecting the Government's position:  the "full slate of extraordinary and compelling reasons" includes the legal injury inflicted as a result of the outdated § 924(c) stacking provision and the resultant sentencing disparity between then and now.  *E.g.*, *United States v. Sessoms*, 2021 WL 4592522, at *2 (E.D.N.Y. Oct. 6, 2021); *United States v. Robles*, 2021 WL 3524067, at *3–4

(S.D.N.Y. Aug. 10, 2021); *United States v. Ballard*, 2021 WL 3285009, at \*4–5 (S.D.N.Y. Aug. 2, 2021); *Reid*, 2021 WL 837321, at \*5; *United States v. Haynes*, 456 F. Supp. 3d 496, 514–16 (E.D.N.Y. 2020). Indeed, "the Second Circuit explicitly mentioned the 'injustice of a defendant's lengthy sentence' as a factor that a district court might consider in favor of a sentence reduction, as 'Congress seemingly contemplated that courts might consider such circumstances when it passed the original compassionate release statute in 1984.'" *United States v. Vargas*, 502 F. Supp. 3d 820, 827 (S.D.N.Y. 2020) (quoting *Brooker*, 976 F.3d at 238).

Williams was sentenced for, *inter alia*, eight § 924(c) convictions. The eight terms of imprisonment imposed pursuant to those convictions "stacked" – meaning Williams serves them consecutively, not concurrently, with each added to one another and to any non-§ 924(c) terms. The first § 924(c) conviction carried a mandatory five-year term of imprisonment; the second through eighth mandated the Court to impose a mandatory consecutive twenty-year term for each. The eight § 924(c) convictions resulted in a total of 145 years' worth of imprisonment. But, after the First Step Act, his eight § 924(c) conviction would result in, at a minimum, 40 years' worth of imprisonment. This result—viewed in conjunction with his rehabilitative efforts, *see infra* Discussion Section II.A.3—contributes to finding that an extraordinary and compelling reason to reduce Williams's sentence exists. *Cf. United States v. Facey*, 2021 WL 3117439, at \*2 (E.D.N.Y. July 20, 2021) ("The "drastic disparity" between [defendant's] sentence and the sentence he would receive today is one extraordinary and compelling reason to grant early release."); *Haynes*, 456 F. Supp. 3d at 514–16.

2.     **COVID-19**

Williams contends his hypertension and kidney function issues place him at heightened risk for severe illness should he contract COVID-19.  Def. Reduce Sent. Mem. at 12.  The Government points out that Williams failed to provide any medical documentation establishing he suffers from hypertension or kidney issues and that Williams acknowledges that he is vaccinated against COVID-19.  Gov't Reduce Sent. Resp. at 12.  Williams responds that the Bureau of Prisons has not yet provided his counsel with his medical records and that vaccination does not fully eliminate the risk of severe injury.

The Court finds that Williams fails to carry his burden of showing the COVID-19 pandemic and its attendant circumstances support the existence of an extraordinary and compelling reason to grant relief.  As noted, Williams fails to provide medical records corroborating his conditions that place him at high risk. *United States v. Johnson*, 2021 WL 4555564, at *2 (S.D.N.Y. Oct. 4, 2021); *United States v. Alvarez*, 2020 WL 4904586, at *3 (E.D.N.Y. Aug. 20, 2020) ("Defendant does not provide the Court with any medical records whatsoever to support his assertion that he is particularly susceptible to COVID-19.").  And, "[g]enerally, a defendant seeking [a reduced sentence under the First Step Act] must make a showing of a current, particularized risk of contracting COVID-19 at the correctional facility at which he is housed," which Williams neglects to do.  *Alvarez*, 2020 WL 4904586 at *4; *e.g.*, *Johnson*, 2021 WL 4555564, at *2.

### 3. Rehabilitative Efforts

The Court finds that, coupled with the § 924(c) stacking, Williams's rehabilitation supports the existence of an extraordinary and compelling reason to reduce his sentence.  Since being incarcerated, Williams has earned his GED, taken more than three dozen educational courses, and received a pay grade promotion from FPI UNICOR due to his "professional work ethic and dedication."  Exs. A, H [DE 793-3, -10] to Decl. of John Gleeson ("Gleeson Decl.") [DE 793-2].  Many of the exhibits submitted in support of his motion reflect that his mentorship and volunteer activities have positively impacted many lives, from his fellow inmates to "young boys and girls in [] urban schools."  Exs. B to G [DEs 793-4 to -9], to Gleeson Decl.  For example, he helped create and implement the Transitions Inmate Mentoring Program as well as served an integral role in leading a six-week program named Hijrah (Transition and Migration).  *Id.*

### B. Section 3553(a) Factors

Section 3553(a) mandates a Court to impose "a sentence sufficient, but not greater than necessary, to comply with [the statutes] purposes," namely, retribution, deterrence, incapacitation, and rehabilitation.  18 U.S.C. § 3553(a); *Vargas*, 502 F. Supp. 3d at 830.  The balance of these factors weighs in favor of a reduced sentence.[4]

---

[4]     The § 3553(a) factors are:

(1)     the nature and circumstances of the offense and the history and
        characteristics of the defendant;

(2)     the need for the sentence imposed—
        (A)     to reflect the seriousness of the offense, to promote respect for the law,
                and to provide just punishment for the offense;
        (B)     to afford adequate deterrence to criminal conduct;

As noted above, Williams has taken great strides to improve himself and to mentor others while incarcerated.  While his disciplinary record does contain infractions of concern—*e.g.*, possessing a dangerous weapon—he has kept it clean for eighteen years and counting.  Ex. I [DE 793-11] to Gleeson Decl.  If released, he will be welcomed back into his family: his mother, three kids, and two grandchildren.  Exs. J to N [DEs 793-12 to -16] to Gleeson Decl.  According to his counsel, "Williams has expressed remorse for the serious mistakes he made."  Def. Reduce Sent. Mem. at 15.

That said, Williams's conduct was particularly egregious.  He committed multiple robberies with firearms (*e.g.*, semi-automatic handguns), made threats of violence ("blow [the bank manager's] f****** head off"), and shot a federal agent once in the stomach and twice in the leg.  Further, an according to an email chain between Williams's counsel and the former AUSA who prosecuted the case, the federal agent shot by Williams is "very concerned for his safety and the safety of the witnesses" should Williams's sentenced be reduced.  Ex. O [DE 793-17] to Gleeson Decl.

---

(C)     to protect the public from further crimes of the defendant; and
(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3)     the kinds of sentences available;
(4)     [the kinds of sentences and sentencing range provided for in the USSG]
(5)     any pertinent [Sentencing Commission policy statement]
(6)     the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7)     the need to provide restitution to any victims of the offense.

*United States v. Hawkins*, 2021 WL 40206, at *2 n.1 (E.D.N.Y. Jan. 5, 2021) (quoting 18 U.S.C. § 3553(a)).

Williams asks the Court to consider "his relative youth at the time if the underlying offenses."  Def. Reduce Sent. Mem. at 17–18.  Williams was 23 years old at the time he committed his crimes – older than the adolescents considered in his cited case law and neuroscience research.[5]  The Court declines to overread those materials in the face of Supreme Court criminal sentencing jurisprudence that itself "distinguish[es] adults from adolescents."  *United States v. Ramsay*, 2021 WL 1877963, at *7 (S.D.N.Y. May 11, 2021) (analyzing in-depth why youth matters at sentencing and citing *Miller v. Alabama*, 567 U.S. 460 (2012); *Graham v. Florida*, 560 U.S. 48 (2010); *Roper v. Simmons*, 543 U.S. 551 (2005); *Thompson v. Oklahoma*, 487 U.S. 815 (1988) (plurality)).  Nothing in the record specific to Williams suggests his mental capacity at the time was akin to an adolescent.

With an eye towards present circumstances, as opposed to those in the past, however, the § 3553(a) factors weigh in favor reducing Williams's sentence.  For that reason, the Court grants Williams's motion to reduce his sentence.  The Court's "discretion in [reducing a term of imprisonment]—as in all sentencing matters—is

---

[5]  *See Brooker*, 976 F.3d at 230 (joined drug trafficking conspiracy at 17, was indicted at 20, was convicted and sentenced at 22); *McCoy v. United States*, 2020 WL 2738225, at *6 (E.D. Va. May 26, 2020), ("sentenced at just 20 years old"); *United States v. Davis*, 2020 WL 6746823, at *1 (E.D.N.Y. Nov. 17, 2020) ("Mr. Davis committed these crimes at the ages of 17 and 18."); James C. Howell et al., *Bulletin 5: Young Offenders and an Effective Response in the Juvenile and Adult Justice Systems: What Happens, What Should Happen, and What We Need to Know* (2013) ("particular[ly] focus[ing] on (1) older juvenile delinquents ages 15-17 . . . and (2) young adult offenders ages 18-24"); MacArthur Found. Rsch. Network on Law and Neuroscience, *How Should Justice Policy Treat Young Offenders?* (Feb. 2017) (analyzing "adolescents" aged "18–21"); Rachel Elise Barkow, *Prisoners of Politics* 44–45 (2019) ("Most *juveniles* discontinue their criminal activity after brief experimentation with it." (emphasis added)).

broad." *Brooker*, 976 F.3d at 237.  That is, the Court is not constrained to reduce Williams's sentence to what it would have been had it sentenced Williams today because Congress did not make the change to § 924(c) retroactive.  *Hughes v. United States*, 138 S. Ct. 1765, 1773 (2018) ("If an amendment applies retroactively, the [Sentencing Reform Act of 1984] authorizes district courts to reduce the sentences of prisoners who were sentenced based on a Guidelines range that would have been lower had the amendment been in place when they were sentenced.").  "On [a motion to reduce sentence], the district court must consider the § 3553(a) factors; it may look to, but is not bound by, the mandatory minimums that the defendant would face if being sentenced for the first time under revised guidelines or statutes." *United States v. Rose*, 837 Fed. App'x 72, 73–74 (2d Cir. 2021).

The totality of § 3553(a) factor justifies resentencing Williams's term of imprisonment to a total 40 years (of which he has served approximately 30 years), which reflects a sufficient but not greater than necessary term that accomplishes the purposes of sentencing.  This sentence, still lengthy, respects the extremely serious nature of Williams's offenses, reflects the need to effect general deterrence, provides just punishment, and promotes respect for the law.

## CONCLUSION

For the reasons discussed above, Williams's motion to vacate is denied.  Both of Williams's postal robbery and bank robbery convictions are crimes of violence and, therefore, his 18 U.S.C. § 924(c) convictions predicated thereon are not unconstitutional.

Williams's motion to reduce his sentence is granted.  The outdated practice of § 924(c) stacking in conjunction with his substantial rehabilitative efforts reflects an extraordinary and compelling circumstance justifying a reduced sentence.  The balance of the § 3553 factors leads the Court to reduce Williams's term of imprisonment to 40 years.

**SO ORDERED.**

Dated: Central Islip, New York
      May 11, 2022

s/ Denis R. Hurley
Denis R. Hurley
United States District Judge